IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| Plaintiff, | : |
| v. | : Criminal Action No.08- 15- |
| JEMAIN Z. DAVIS, | : |
| Defendant. | : |

**INFORMATION**

The United States Attorney for the District of Delaware charges that:

**COUNT 1**
**(Conspiracy to Commit Wire Fraud)**

**Introduction**

At all times material to this Information:

1. Escheat was a process through which a state, as sovereign, took custody of, or assumed title to, unclaimed property. Examples of unclaimed property included lost or forgotten uncashed checks, stocks, bonds, dividends, bond interest, insurance proceeds, utility refunds, and safe deposit box contents.

2. The Bureau of Unclaimed Property ("Bureau") was a subdivision of the Division of Revenue of the Delaware Department of Finance. The Bureau received unclaimed property from "holders" of the property and processed claims filed by owners who sought to take possession of the unclaimed property.

3. Under Delaware law, companies incorporated in Delaware were required under certain circumstances to file with the Bureau reports detailing their holdings of unclaimed stock

and other securities and to escheat (i.e. deliver) to the Bureau that property.

4. When filing their reports with the Bureau, companies holding unclaimed stock were expected to comply with the requirements described in the State of Delaware Escheat Handbook. The Handbook required holders to describe the unclaimed property they would escheat with particularity. For example, holder "ABC Co." was expected to report to the Bureau that it was escheating 100 shares of its common stock worth $100, and that the books and records of the company indicated that "John Doe" of "123 Main Street, Anywhere USA" owned that property. This reporting was required to assist the Bureau in determining whether a claim filed by a purported owner of the property (for example, John Doe's heir) was legitimate.

5. Despite this expectation, companies with unclaimed stock often described stock escheated to the Bureau as "owner unknown" because the companies did not have records that established the identity of the owner of the stock.

6. Unclaimed property was delivered to Delaware either electronically or by check made payable to the Delaware State Escheator. The escheated property was deposited into Delaware's General Fund.

7. There was no time limit on when a owner of unclaimed property could come forward to make a claim. In fact, most property escheated to the Bureau was never claimed.

8. A.L. was employed by the Bureau. A.L.'s responsibilities included the processing of ownership claims to unclaimed property filed with the Bureau.

9. A.L. had authority to approve small dollar claims. For larger claims, A.L. was required to obtain approval from one or more supervisors.

10. Once a claim was approved, the Bureau prepared a payment voucher and sent it to the Delaware Office of the State Treasurer ("OST"). OST was responsible for issuing checks to owners who had established their right to unclaimed property. After issuing the checks, OST delivered the checks to the Bureau for disbursement. A.L. was the person at the Bureau responsible for disbursement of checks on approved claims.

11. Company Z was a Delaware corporation created in or around January 1990 as a result of the merger of Company X and Company Y. Once it was created, Company Z attempted to contact all stockholders to advise them of the merger and the company's offer to exchange existing stock of the merged companies for the stock in the new entity. Despite several years of effort, Company Z was unable to locate the record owners of millions of dollars worth of stock and dividends. This property was escheated to Delaware in due course in or around 1997 and 1998. Much of that property was escheated as "owner unknown."

12. Following the escheatment of the Company Z's unclaimed property to Delaware, individuals continued to contact Company Z, claiming that they owned Company X and/or Company Y stock prior to the merger.

13. In response to such a claim, Company Z researched its records to determine if the claimant was entitled to property that had been escheated to Delaware. If Company Z determined its records showed that the claimant was entitled to escheated property, it sent the claimant a letter describing how much of the claimant's property was escheated to Delaware according to company records ("the Company Z Verification Letter"). Company Z also sent a copy of the Company Z Verification Letter, often by email, to the

Bureau. The Bureau treated the Company Z Verification Letter as adequate proof of stock ownership

### Charging Paragraph

14. Beginning in or around October 2005, and continuing until in or around October 2007, in the District of Delaware and elsewhere, JEMAIN Z. DAVIS, defendant herein, and A.L. and S.R., did knowingly combine, conspire, confederate and agree together and with each other to commit an offense against the United States, to wit, to violate 18 U.S.C. § 1343, in that they knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations and promises, would and did transmit, and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, the wire transfer of $67,000 on or about August 29, 2007 from the defendant's Commerce Bank account to S.R.'s PNC Bank account, initiated by the defendant at a Commerce Bank branch in Delaware, which wire communication was transmitted by Commerce Bank in Delaware to a Commerce Bank processing facility in New Jersey.

### The Scheme and Artifice to Defraud Delaware and Certain Owners of Unclaimed Property

It was part of the scheme and artifice to defraud that:

15. A.L. would and did process false and fraudulent claims for property that had been escheated to, and was in the custody of, the State of Delaware for his own benefit and for the benefit of JEMAIN Z. DAVIS, as more fully set forth in paragraphs 17 to 18 below.

16. JEMAIN Z. DAVIS would and did participate in the processing of false claims by A.L. by submitting signed and notarized claims for unclaimed property in which he had no interest, and to which he had no right, and by submitting legitimate identity documents to support the false and fraudulent claims, as more fully set forth in paragraphs 19 to 23 below.

**Processing of False and Fraudulent Claims**

17. A.L. processed false and fraudulent claims for abandoned property in the name of JEMAIN Z. DAVIS knowing that he was not a legitimate claimant, in order to obtain the claimed property by fraud from both Delaware and the true owner of the claimed property, in the amounts described, and on or about the dates set forth in the table below:

| Date | Claim | Amount |
| --- | --- | --- |
| November 1, 2005 | First J.D. Claim | $30,033.64 |
| July 25, 2007 | Second J.D. Claim | $195,251.23 |

18. Knowing that each of the claims identified in paragraph 17 above was false and fraudulent, A.L. would and did prepare the claim for supervisory review and approval, prepare, or cause to be prepared, a payment voucher for the claim, and submit, or cause to be submitted, a payment voucher to OST.

**Provision of Documents Supporting the Claims**

19. A.L. knew that in the normal course Company Z would send Delaware a copy of the Company Z Verification Letter.

20. A.L. knew that the Bureau would consider the Company Z Verification Letter as sufficient proof of a stockholder's ownership of property escheated by Company Z in

cases where the property had originally been delivered to Delaware by Company Z as "owner unknown."

21. For each of the false and fraudulent claims described in paragraph 17 above, A.L. created a forged, false, and fraudulent document purporting to be a Company Z Verification Letter, stating that JEMAIN Z. DAVIS (or a predecessor in interest) had owned the common stock of Company Y prior to the merger that created Company Z.

22. A.L. knew that the Bureau required claimants to submit documents to establish the identity of the claimant as part of the claim approval process.

23. Each of the false and fraudulent claims described in paragraph 17 above was processed with legitimate identification documents provided by JEMAIN Z. DAVIS, including bank statements.

### Overt Acts

24. In furtherance of the charged conspiracy and to effect the illegal object thereof, JEMAIN Z. DAVIS, and others known to the United States Attorney did commit and perform in the District of Delaware and elsewhere the following overt acts:

   a. In or around October 2005, A.L. processed the First J.D. Claim indicating that JEMAIN Z. DAVIS, as beneficiary of "M.D.," was entitled to $30,033.64 in unclaimed property escheated to Delaware by Company Z.

   b. On or about November 3, 2005, JEMAIN Z. DAVIS deposited a check for $30,033.64 drawn on the State of Delaware Vendor Payment Account into a Commerce Bank account.

   c. On or about November 4, 2005, A.L. deposited a check for $15,000 drawn on

       JEMAIN Z. DAVIS' Commerce Bank account into A.L.'s Artisans Bank account.

d. On or about July 25, 2007, A.L. processed the Second J.D. Claim indicating that J.D. was entitled to $195,251.23 in unclaimed property escheated to Delaware by Company Z.

e. On or about August 20, 2007, JEMAIN Z. DAVIS deposited a check for $195,251.23 drawn on the State of Delaware Vendor Payment Account into a Commerce Bank account.

f. On or about August 28, 2007, JEMAIN Z. DAVIS transferred $65,000.00 to a Commerce Bank account belonging to S.R.

g. On or about August 29, 2007, JEMAIN Z. DAVIS wired $67,000 to a PNC Bank account belonging to S.R.

All in violation of 18 U.S.C. §§ 1343 and 1349.

## COUNT 2
### (Illegal Monetary Transaction)

25. Paragraphs 1 through 24 are incorporated herein by reference.

**Charging paragraph**

26. On or about August 29, 2007, in the District of Delaware and elsewhere, JEMAIN Z. DAVIS, defendant herein, did knowingly engage and attempt to engage in a monetary transaction by, through, or to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, that is the transfer of $67,000 by wire from Commerce Bank to PNC Bank, such property having been derived from a specified unlawful activity, that is wire fraud, in violation of 18

U.S.C. §§ 1957 and 2.

## NOTICE OF FORFEITURE

27. Paragraphs 1 to 26 are incorporated herein by reference for the purpose of alleging forfeitures pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

28. Upon conviction of the offense alleged in Count 1 of this Information, JEMAIN Z. DAVIS, defendant herein, shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense. The property to be forfeited includes, but is not limited to, the following: a sum of money equal to $225,284.87 in United States currency, representing the amount of proceeds obtained as a result of the offense, to wit, a violation of 18 U.S.C. § 1349.

29. If any of the property described above, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c).

All pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

COLM F. CONNOLLY<br>
United States Attorney<br>
<br>
By: _____<br>
David C. Weiss<br>
Douglas E. McCann<br>
Assistant United States Attorneys

Dated: February 5, 2008